**CONRAD S. KEE USB# 14916**
**JACKSON LEWIS, P.C.**
**Attorneys for Defendant**
**222 S. Main St., Suite 500**
**Salt Lake City, UT 84101**
**Telephone:  801-736-3199**
**keec@jacksonlewis.com**

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

SHC HOLDCO INC., a Delaware Corporation,

                    Plaintiff,

vs.

AMANDA L. FISHER., an individual,

                    Defendant.

Civ. No.:  2:15-cv-00325-DBP

---

### DEFENDANT'S MOTION TO DISMISS OR,
### IN THE ALTERNATIVE, MOTION TO TRANSFER OR STAY

Defendant Amanda Fisher ("Fisher"), by and through her undersigned counsel and pursuant to 28 U.S.C. § 1404(a), § 1406(a) and Fed. R. Civ. P. 12(b)(3), files this Motion to Dismiss for Improper Venue or, in the Alternative, Motion to Transfer or Stay.

As fully discussed below, Fisher seeks to (1) dismiss this case because venue is improper or, in the alternative, transfer this case to the Northern District of Georgia, Atlanta Division; (2) dismiss or stay this case pursuant to the first-filed rule, since Fisher filed her Georgia state court case against Plaintiff first, (3) dismiss or stay this case pursuant to Younger and Colorado River, both of which are U.S. Supreme Court cases that discourage piecemeal litigation of legal and factual issues that are already pending in state court, or (4) transfer this case on forum non

conveniens grounds to the Northern District of Georgia, Atlanta Division, where venue is proper

and it is otherwise more convenient to litigate the case because witnesses, documents and clients

are located there.  Moreover, the discussion below for this last request for relief establishes that

the Utah forum selection clause at issue is not enforceable, therefore the Complaint should be

dismissed for lack of personal jurisdiction over Fisher pursuant to Fed. R. Civ. P. 12(b)(2).

## I.   LEGAL ANALYSIS – IMPROPER VENUE

28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong
> division or district shall dismiss, or if it be in the interest of justice, transfer such
> case to any district or division in which it could have been brought.

As discussed below, Plaintiff's claims against Fisher should be dismissed because venue is

improper in the District of Utah under 28 U.S.C. § 1391(b).  Alternatively, the claims should be

transferred to the Northern District of Georgia, Atlanta Division, because venue is proper in that

Court.

### A.   Plaintiff's Claims Against Fisher Should Be Dismissed Because Venue Is Improper in this District under 28 U.S.C. § 1391(a).

Venue in this case is governed by 28 U.S.C. § 1391(b), which provides in relevant part:

> A civil action may be brought in (1) a judicial district in which any defendant
> resides, if all defendants are residents of the State in which the district located, (2)
> a judicial district in which a substantial part of the events or omissions giving rise
> to the claim occurred . . . or (3) if there is no district in which an action may
> otherwise be brought as provided in this section, any judicial district in which any
> defendant is subject to the court's personal jurisdiction with respect to such
> action.

Venue is not proper in this District.  First, venue is not proper under § 1391(b)(1) because

Fisher does not reside in Utah.[1]

---

[1]   Fisher's affidavit, which supports the factual allegations in this motion, is attached as Ex. A.

Second, venue is not proper under § 1391(b)(2) because a "substantial part of the events or omissions" giving rise to Plaintiff's claims against Fisher did not take place in the District of Utah. They took place in Georgia. The Eleventh Circuit Court of Appeals has addressed this precise issue in the non-compete context. See Jenkins Brick Co. v. Bremer, 321 F.3d 1366 (11th Cir. 2003). In Bremer, the plaintiff sued the defendant in the U.S. District Court for the Middle District of Alabama for allegedly violating a non-compete agreement. The defendant filed a motion to dismiss the case for lack of venue or, alternatively, to transfer the case to the U.S. District Court for the Southern District of Georgia.

The Alabama District Court transferred the case to Georgia. The Georgia District Court held that venue was improper in Alabama and granted summary judgment to the defendant by applying Georgia law. The Eleventh Circuit affirmed. With respect to venue under § 1391(b)(2), the Eleventh Circuit held:

> The events that gave rise to Jenkins Brick's claim occurred exclusively in Georgia. The contract was not negotiated; rather, it was presented to Bremer in Georgia. It was executed in Georgia because that is where Bremer signed the contract. The non-compete agreement was also intended to be performed primarily in Savannah in order to protect the Savannah business and goodwill that Jenkins Brick acquired with the help of Bremer . . . . Finally, and most importantly, the contract was breached when Bremer failed to perform his post-employment obligation to refrain from competing against Jenkins Brick – conduct that occurred only in Georgia. In sum, none of the acts giving rise to Jenkins Brick's claim occurred in Alabama, much less a "substantial part" of them.

Bremer, 321 F.3d at 1372. Consequently, "only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." Id. at 1371.

Bremer establishes that venue is improper in the District of Utah because none of the alleged acts giving rise to Plaintiff's claims against Fisher took place here, much less a

"substantial part" of them.  The following facts show that none of the alleged actions took place

in Utah:

- Fisher signed the Non-Competition, Non-Solicitation and Confidentiality
  Agreement ("Agreement") in Georgia.

- Fisher worked for Plaintiff in Georgia.

- Fisher is allegedly violating the Agreement in Georgia.

- The Agreement between Plaintiff and Fisher does not contain any geographic
  restriction with respect to Utah.  See Compl. Ex. A § 4.  The Agreement
  purportedly restricts Fisher's ability to perform certain business-related activities
  within 50 miles of where she worked for Plaintiff in Atlanta, Georgia.  Id.  Thus,
  Plaintiff intended the employment agreement to be performed in Georgia and to
  purportedly protect Plaintiff's business interests in Georgia.

- Fisher never performed any services for Plaintiff in Utah.

In fact, Plaintiff's own Complaint establishes the claims arose in Georgia and have no

connection to Utah:

- Plaintiff hired Fisher "to work out of [Plaintiff's] office in Atlanta, Georgia."
  Compl. ¶ 21.

- Fisher "was responsible for marketing [Plaintiff's] staffing capabilities to existing
  and potential clients at various Atlanta and Georgia-based healthcare facilities . . .
  ."  Compl. ¶ 23.

- Fisher "fostered relationships on [Plaintiff's] behalf and placed [Plaintiff's]
  recruited talent with numerous hospitals and home health facilities in Georgia . . .
  ."  Compl. ¶ 24.

- "On average, Ms. Fisher was responsible for more than 60% of [Plaintiff's]
  Atlanta office's revenue."  Compl. ¶ 28.

- "The Agreement defines its geographic scope for the type of services provided by
  Ms. Fisher as 'within a fifty (50) mile radius of the office in which the Employee
  was employed by or performed work for [Plaintiff]'" which was in Georgia.
  Compl. ¶ 38.

- "Fisher now works for Accountable's Atlanta, Georgia office."  Compl. ¶ 51.

- "Accountable maintains a substantial presence in the Atlanta metropolitan area." Compl. ¶ 56.

Because all or a substantial part of the acts giving rise to Plaintiff's claims against Fisher did not take place in Utah, venue is improper in this District.  See, e.g., Jenkins Brick Co., 321 F.3d at 1372-1373 (holding that venue was proper in a non-compete case in the state in which the agreement was intended to be performed and the agreement was breached).

Third, venue is not proper under § 1391(b)(3) because it is a fallback provision that comes into play only if there is no district in which the action may otherwise be brought.  That is not the case here.  Plaintiff could have filed suit against Fisher where she resides (in Georgia) or where a substantial part of the events or omissions giving rise to the claim occurred (also in Georgia).

For these reasons, Plaintiff's claims against Fisher should be dismissed pursuant to 28 U.S.C. § 1406(a), which authorizes dismissal of a case laying venue in the wrong district, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) ("a party may assert the following defenses by motion . . . improper venue").

**B.      Alternatively, Plaintiff's Claims Against Fisher Should Be Transferred to the Northern District of Georgia Pursuant to 28 U.S.C. § 1406(a).**

28 U.S.C. § 1406(a) authorizes a district court to transfer a case laying venue in the wrong division or district "to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  The Northern District of Georgia, Atlanta Division, is an appropriate district for transfer of Plaintiff's claims because the claims could have been brought in that district.  Like this Court, the Northern District of Georgia, Atlanta Division, has subject matter based on diversity pursuant to 28 U.S.C. § 1332.  Moreover, as already discussed above, Fisher resides in

that district and all or a substantial part of the actions giving rise to Plaintiff's claims against Fisher took place in that district.

Nonetheless, Fisher believes that dismissal of this case is the best option.  She has a declaratory judgment action pending against Plaintiff in Gwinnett County, Georgia state court. Compl. ¶¶ 64-67.  That case was filed first – on April 22, 2015.  It would be a waste of judicial resources and the parties' resources to have a cases pending in Georgia federal court and Georgia state court concerning the very same Agreement.  It would also present the real risk of inconsistent decisions by different courts in the same state.  It would be more prudent to dismiss this case and have Plaintiff bring all of its claims as compulsory counterclaims in the Georgia state court case.

**C.**      **The Utah Forum Selection Clause in the Agreement Does Not Change the Foregoing Analysis.**

The Agreement contains a Utah forum selection clause. Compl. ¶ 5.  However, that clause has no bearing on the foregoing venue analysis. Atlantic Marine Const. Co., Inc. v. United States District Court for the Western District of Texas, 134 S. Ct. 568 (2013).  Atlantic Marine held, "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).  If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).  Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." Id. at 577.  "The structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum." Id. at 578.

**II.**          **LEGAL ANALYSIS – FIRST FILED RULE**

Even if venue is proper in this Court, though it is not, the first-filed rule establishes that this case should be stayed.  The Tenth Circuit Court of Appeals has recognized the rule that (1) when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case and (2) "the court which first obtains jurisdiction should be allowed to first decide issues of venue." Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163-1164 (10th Cir. 1982).  Therefore, even if venue were proper, this case should be stayed and the Georgia state court should decide the issue of venue.

Moreover, the existence of a Utah forum selection clause does not change the analysis. The Tenth Circuit has held, "The existence of a venue selection clause does not impose an absolute duty nor does it endow a party with an absolute right to have every dispute between the parties litigated in the named forum.  The applicability of the venue selection clause is an issue of fact in and of itself.  We do not consider it vexatious for a party to raise this issue in a forum other than the one designated in the venue selection clause." Id. at 1163.

Accordingly, the first-filed rule establishes that this case should be stayed.

### III.        LEGAL ANALYSIS – YOUNGER ABSTENTION DOCTRINE

Fisher moves for Younger abstention because this case and the Georgia state case are duplicative.   "For Younger abstention to be appropriate, three elements must be present: (1) interference with an ongoing state judicial proceeding; (2) involvement of important state interests; and (3) an adequate opportunity afforded in the state court proceedings to raise the federal claims." Northern Natural Gas Co. v. Trans Pacific Oil Corp., 529 F.3d 1248, 1252 (10th Cir. 2008) (quoting Southwest Air Ambulance v. City of Las Cruces, 268 F.3d 1162, 1178 (10th Cir. 2001)).

In a diversity case, <u>Rienhardt v. Kelly</u>, the Tenth Circuit has explained that "<u>Younger</u> abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief--such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings--when such relief could adequately be sought before the state court." 164 F.3d 1296, 1302 (10th Cir. 1999). Therefore, in <u>Reinhardt</u>, the Circuit held that <u>Younger</u> was not applicable because the trial court was not asked to impose equitable relief that interfered with the related state proceedings." <u>Id.</u>

In this case, unlike <u>Reinhardt</u>, Plaintiff does seek equitable relief that would interfere with the Georgia state court case. Moreover, the injunction that Plaintiff seeks in its complaint and motion in this case would effectively enjoin a party to the Georgia case – Accountable Healthcare Staffing, Inc. ("Accountable"). While Plaintiff does not seek to enjoin the continuation of the Georgia state case, such broad injunctions as it seeks in this case would have the effect of interfering with that proceeding. <u>See</u> <u>Adobe Systems v. James</u>, 2011 U.S. Dist. LEXIS 15507 *11 (D. Utah 2011) ("In the present case, unlike the <u>Reinhardt</u> case, Adobe does seek equitable relief that would interfere with the California state court action and, therefore, the Court finds that it may consider <u>Younger</u> abstention. The equitable injunction Adobe seeks in its complaint and motion in the present case would effectively enjoin a party to the California state court cases--Corda--while not joining Corda in this case. Although Adobe does not directly seek to enjoin the continuation of the California court, such broad injunctions as it seeks in the present case would have the effect of interfering with that proceeding.")

As to the remaining factors of the <u>Younger</u> abstention doctrine, Georgia has the most compelling interest in the outcome of this case (potential enforcement of a covenant in Georgia

against one of its citizens), and Plaintiff has an adequate opportunity in the Georgia state court proceedings to raise its claims in that case.

For these reasons, the <u>Younger</u> abstention doctrine applies and this case should be dismissed or stayed. <u>See</u> <u>Adobe</u>, 2011 U.S. Dist. LEXIS 15507 *17-18 (applying <u>Younger</u> in similar circumstances).

### IV.      LEGAL ANALYSIS – COLORADO RIVER DOCTRINE

Fisher also moves for <u>Colorado River</u> abstention.  In <u>Colorado River</u>, the Supreme Court announced that although certain abstention doctrines might not apply in a case, "judicial economy concerns may justify deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case."  Moreover, the Tenth Circuit has held:

> Because the <u>Colorado River</u> Doctrine springs from the desire for judicial economy, rather than from constitutional concerns about federal-state comity, and because the <u>Colorado River</u> Doctrine is an exception to our jurisdictional mandate from Congress, the Doctrine may only be used when 'the clearest of justifications . . . warrants dismissal.' Thus, while <u>Colorado River</u>'s judicial economy goals allow a federal court to avoid the 'virtually unflagging obligation . . . to exercise the jurisdiction given it,' the appropriate circumstances for deferral under the <u>Colorado River</u> Doctrine are 'considerably more limited than the circumstances appropriate for abstention' and must be 'exceptional.'

<u>Rienhardt</u>, 164 F.3d at 1302-03 (quoting <u>Colorado River</u>, 424 U.S. at 818-19 (alternations omitted)).

Before examining the <u>Colorado River</u> factors to determine whether "exceptional circumstances exist" . . . "a federal court must first determine whether the state and federal proceedings are parallel." <u>Fox v. Maulding</u>, 16 F.3d 1079, 1081 (10th Cir. 1994).  "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." <u>Id.</u>  "[T]he better approach is to examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings." <u>Id.</u>  "[This] approach heeds the Supreme Court's admonition in <u>Moses H. Cone</u> that to grant a stay or dismissal under the

Colorado River doctrine would  be a serious abuse of discretion unless the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties. . . . [T]he decision to invoke Colorado River necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." Id. (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19, 28, (1983).

The Georgia state court case is parallel to this case. It involves the same parties, Plaintiff and Fisher. The Georgia state case also includes Accountable as a party.  It is still parallel with the addition of Accountable because it is Fisher's employment with Accountable that Plaintiff seeks to prevent. The Georgia state case arises from the exact same facts as this case.  All of the claims between Plaintiff and Fisher involve the same disputed issues of fact that will be litigated in the Georgia state case.  See Adobe, 2011 U.S. Dist. LEXIS 15507 *17-18 (holding cases were parallel under nearly identical circumstances).  As a result, this case and the Georgia state case are parallel.

Next, this case is also exceptional.  As explained in Fox v. Maulding the relevant factors include: "whether either court has assumed jurisdiction over property"; "the inconvenience of the federal forum"; "the desirability of avoiding piecemeal litigation;" "the order in which the courts obtained jurisdiction;" "the vexatious or reactive nature of either the federal or the state action"; "whether federal law provides the rule of decision;" "the adequacy of the state court action to protect the federal plaintiff's rights" and "whether the party opposing abstention has engaged in impermissible forum-shopping." Id. (quoting Colorado River, 424 U.S. at 818 (numbering omitted) and Moses H. Cone, 460 U.S. at 18 n.20, 23, and 28).  These factors favor a stay.

Whether either court has assumed jurisdiction over property:   There is no property at issue in this case, so that factor does not affect the balancing.

The inconvenience of the federal forum: This factor favors a stay.  The federal forum is less convenient than the Georgia forum.   While Plaintiff's headquarters are located in Utah, Fisher lives and works in Georgia.  The majority – if not all of – the witnesses, documents and clients are located in Georgia.   Even most evidence regarding Plaintiff's own witnesses, documents and clients will arise out of Plaintiff's Atlanta office.  As a result, the Georgia forum is more convenient than Utah.

The order in which the courts obtained jurisdiction:   This factor favors a stay. It is undisputed that the Georgia state court case was filed first.

The vexatious or reactive nature of either the federal or the state action/forum shopping: This factor is neutral. Plaintiff forum shopped by using a forum selection clause to file suit in Utah.  Fisher based its Georgia state case, in part, on Georgia case law establishing that forum selection clauses are unenforceable in certain circumstances, which Fisher contends are present in this case.

The desirability of avoiding piecemeal litigation: This factor favors a stay.  Georgia has a strong public policy involving non-compete agreements and non-solicitation agreements, specifically enacted in a new law that went into effect in May 2011. O.C.G.A. Section 13-8-50 et al.  If this Court does not dismiss or stay this action pending the Georgia state court's determination on such issues, there is a real possibility of inconsistent decisions on issues for which Georgia has a strong public policy.

Whether federal law provides the rule of decision:  This factor favors a stay.  There is no federal law involved in this case.

The adequacy of the state court action to protect the plaintiff's rights:  This factor favors a stay.  Plaintiff may adequately assert all of its rights in the first-filed Georgia state case.

For these reasons, this is an exceptional case warranting a dismissal or stay under Colorado River.  See Adobe, 2011 U.S. Dist. LEXIS 15507 *17-18 (applying Colorado River in similar circumstances).

## V.    LEGAL ANALYSIS – FORUM NON CONVENIENS

A district court has the inherent power to decline to exercise jurisdiction even when venue is proper. See Gulf Oil v. Gilbert, 330 U.S. 501, 506-07 (1947).  To obtain dismissal under this doctrine, "the moving party must demonstrate that (a) an adequate alternative forum is available, (b) the public and private interest factors weigh in favor of dismissal, and (c) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." Leon v. Millon Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001).

The presence of a valid forum-selection clause requires district courts to adjust their usual forum non conveniens analysis in three ways. Atlantic Marine, 134 S. Ct. at 581.  First, "the plaintiff's choice of forum merits no weight," meaning the "plaintiff" is the party that ignored the forum-selection clause and filed suit in a foreign court. Id. at 581-82. Second, the district court "should not consider arguments about the parties private interests" because when a party agrees to a forum-selection clause, the party waives the right to challenge the pre-selected forum as inconvenient. Id. at 582. Third, when a party bound by a forum-selection clause files suit in a different forum than the one pre-selected, the plaintiff's chosen venue's choice-of-law rules will not apply, again meaning the "plaintiff" is the party that ignored the forum-selection clause and filed suit in a foreign court. Id.

Pursuant to <u>Atlantic Marine</u>, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." <u>Id.</u> at 581.  However, before a determination can be made as to whether the modified analysis in <u>Atlantic Marine</u> applies, the Court must first determine whether the forum-selection clause is valid and enforceable.

<u>The Utah forum selection clause is not valid; lack of personal jurisdiction</u>

In Utah, "while a forum selection/consent-to-jurisdiction clause by itself is not sufficient to confer personal jurisdiction over a defendant as a matter of law, such clauses do create a presumption in favor of jurisdiction and will be upheld as fair and reasonable so long as there is a rational nexus between the forum selected and/or consented to, and either the parties to the contract or the transactions that are the subject matter of the contract.  Although the rational nexus element does require some connection between Utah and either the parties to or the actions contemplated by the contract, it need not rise to the level required under section 78-27-24." <u>Phone Directories Co. v. Henderson</u>, 2000 UT 64 (Utah 2000).

There is no rational nexus between Utah and this dispute.  To be sure, Plaintiff's headquarters are located in Utah.  But the razor thin connection to this case ends there.  As discussed above, most if not all of the witnesses, documents and clients are located in Georgia. Plaintiff seeks to enjoin Fisher in Georgia, not Utah.  Plaintiff seeks to protect its business interests in Georgia.  For these reasons, there is no rational nexus between Utah and this case, therefore the forum selection clause is not enforceable. <u>See</u> <u>generally</u> <u>Prows v. Pinpoint Retail Sys., Inc.</u>, 868 P.2d 809 (Utah 1993) (holding that a party who challenges a forum selection clause has the burden of proving it is unfair and unreasonable; holding that party had done so

because requiring a party to try cases in New York and Utah would be unjust and deny him his day in court).

Accordingly, the forum selection clause in the Agreement is not enforceable.  Moreover, that also means the Court lacks personal jurisdiction over Fisher, therefore dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(2).  There is no basis for personal jurisdiction over Fisher in Utah other than the forum selection clause.  She has never worked in or lived in Utah.

<u>The case should be transferred to Georgia</u>

Even if the forum-selection clause was valid and enforceable, though it is not, the modified analysis in <u>Atlantic Marine</u> applies. The first part of this analysis requires the Court to determine whether an adequate alternative forum exists.  Georgia is an adequate alternative forum.

Next, the Court must consider the relevant public interest factors to determine whether dismissal is appropriate.  Relevant public interests include "the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally." <u>Pierre-Louis v. Newvac Corp.</u>, 584 F.3d 1052, 1056 (11th Cir. 2009).

In this case, the public interest factors weigh in favor of dismissal under forum non conveniens because (1) the lawsuit lacks any real connection to this district, and (2) Georgia law will govern the dispute because, despite the Utah choice of law clause, for the reasons already discussed above.  Georgia has all of the material contacts with this dispute. <u>See</u> <u>Shearson Lehman Bros., Inc. v. M&L Investments</u>, 10 F.3d 1510, 1514-15 (10th Cir. 1993) (choice of law clause will not be applied if the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law

of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue which would be the state of the applicable law in the absence of an effective choice of law by the parties).

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Fisher's Motion and (1) dismiss this case because venue is improper or, alternative, transfer this to the Northern District of Georgia, Atlanta Division, because venue is improper; (2) dismiss or stay this case pursuant to the first-filed rule, (3) dismiss or stay this case pursuant to the <u>Younger</u> abstention doctrine and <u>Colorado River</u> or (4) transfer this case on forum non conveniens grounds to the Northern District of Georgia, Atlanta Division, where venue is proper and it is otherwise more convenient to litigate the case, including for lack of personal jurisdiction over Fisher in Utah.

Respectfully submitted, this 7th day of May, 2015.

*s/ Conrad S. Kee*
Conrad S. Kee
Utah Bar No. 14916
JACKSON LEWIS P.C.
222 S. Main St., Suite 500
Salt Lake City, UT 84101
Telephone:  801-736-3199
keec@jacksonlewis.com

ATTORNEY FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 7th day of May, 2015, I filed a true and correct copy of the foregoing **MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER OR STAY** with the Clerk of the Court via CM/ECF, which will send an email notification to the following:


Nathan D. Thomas, Esq.
Elizabeth M. Butler, Esq.
JONES WALDEO HOLBROOK & McDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, Utah  84101




                                                            *s/ Conrad S. Kee*
                                                            for Jackson Lewis P.C.



4842-9280-6691, v. 1