Nathan D. Thomas (USB #11965)
Elizabeth M. Butler (USB #13658)
JONES WALDO HOLBROOK & McDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200
nthomas@joneswaldo.com
ebutler@joneswaldo.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHC HOLDCO INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMANDA L. FISHER, an individual,<br><br>Defendant. | **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER OR STAY**<br><br>Civ. No.: 2:15-cv-00325-RJS<br><br>Honorable Robert J. Shelby |

Plaintiff SHC Holdco, Inc. ("SHC") hereby files this Opposition to Defendant Amanda L. Fisher's ("Ms. Fisher") Motion to Dismiss or, in the Alternative, Motion to Transfer or Stay [Dkt. No. 9] (the "Motion to Dismiss"). By this Opposition, SHC respectfully submits that Ms. Fisher's Motion should be denied and that the Court should retain and exercise its jurisdiction over this matter.

## INTRODUCTION

As a condition of her employment with SHC, Ms. Fisher executed a "Non-Competition, Non-Solicitation and Confidentiality Agreement" (the "Agreement").  For the duration of her employment, Ms. Fisher accepted the benefits of her employment in the form of salary, bonuses, training, access to confidential information, and otherwise. These are benefits she received *only* because she signed the Agreement at issue. Upon her resignation, however, this Agreement apparently lost all meaning to Ms. Fisher.

Ms. Fisher left the employ of SHC on April 15, 2015. Thereafter, she accepted employment with a direct competitor of SHC, at an office less than less than 20 miles away from the SHC office at which she was employed, to perform substantially the same work she had performed for SHC. Ms. Fisher's employment with an SHC competitor for which she does the same work in the same market constitutes a direct and material breach of Ms. Fisher's continuing obligations to SHC. And, upon SHC's notice of this breach to Ms. Fisher, she and her new employer, Accountable Healthcare Staffing ("AHS"), initiated a suit against SHC in the courts of the State of Georgia. This, too, is a direct breach of Ms. Fisher's obligations to SHC.

Ms. Fisher's Agreement with SHC specifically provides that the "sole and exclusive" forum for any dispute "arising out of" the Agreement is in the state and federal courts located in Utah. The Agreement provides that the parties shall "not to commence any litigation relating [to the agreement] except in such courts."  Notwithstanding this provision, Ms. Fisher now asks the Court to dismiss or transfer this action to Georgia. In so doing, she asks the Court to sanction her continued disregard for her obligations to SHC and to tacitly authorize her multiple breaches. There is no basis on which to do so.

A forum selection clause that is not procured through fraud or overreaching is enforceable. Here, there is no allegation of fraud or overreaching. As a result, venue in this forum is appropriate. Similarly, the Agreement and its forum selection provision, combined with

the fact that SHC is headquartered in Utah, makes clear that this Court should not defer to Ms. Fisher's preferred forum of Georgia through either abstention or a convenience transfer pursuant to 28 U.S.C § 1404(a). Only in exceptional circumstances shall a court decline to exercise jurisdiction in the face of a forum selection clause. This is not such an exceptional case.

Ms. Fisher accepted the forum selection clause as a predicate to her receipt of benefits from the Utah-based SHC. She cannot now simply avoid this obligation. Accordingly, SHC respectfully submits that the Court deny Ms. Fisher's Motion to Dismiss.

## BACKGROUND FACTS

General Background

1.    SHC, a Delaware corporation headquartered in Park City, Utah, is a healthcare-staffing company, matching healthcare professionals with healthcare facilities. SHC operates sixty local offices in markets throughout the United States.  It operates through its wholly-owned subsidiary SHC Services, Inc. doing business as Supplemental Health Care. (Declaration of Steve Ure [Dkt. No. 2-2, starting at p. 13] ("Ure Decl.") at ¶ 2).

2.    Since its founding thirty years ago, SHC has grown to become one of the country's largest healthcare-staffing agencies. (Ure Decl., ¶ 3).

3.    Because SHC's business is built on its relationships with healthcare facilities and healthcare professionals and because of the highly competitive nature of the healthcare professional staffing industry and the attendant value of a company's proprietary information and customer contacts, SHC takes great care to protect those relationships and its confidential information. (Ure Decl., ¶¶ 18−19).

4.    To that end, SHC requires any employee who has contact with its healthcare facilities, healthcare professionals and/or who has access to its proprietary information to execute

a non-competition, non-solicitation and confidentiality agreement as a condition of employment with SHC. (*Id*. at ¶ 20).

5.      Defendant Amanda Fisher was hired by SHC as a Staffing Manager in December of 2013 and on December 16, 2013, Ms. Fisher signed a Non-Competition, Non-Solicitation and Confidentiality Agreement (the "Agreement"). (*See* Ure Decl. at ¶ 20 and Agreement at Exhibit A thereto and on file with this Court [Dkt. No. 2-2 starting at p. 21]; in the interest of convenience, a true and correct copy of the Agreement is attached hereto as Exhibit 1).

6.      Among other things, the Agreement contains certain confidentiality obligations and restrictive covenants that survive termination of employment. (Agreement at §§ 3-4.  These restrictive covenants are the subject of this action and are addressed fully in SHC's pending Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. No. 4].   Discussion of these covenants is not repeated here.

7.      In her capacity as a Staffing Manager, Ms. Fisher was responsible for recruiting healthcare professionals or "talent" to add to SHC's candidate database and maintaining relationships with those professionals in order to allow SHC to place them at various facilities in the event a facility desired a professional with a particular skill set, experience, and preferences. (Ure Decl. at ¶ 17; Declaration of Nicole Burleson [Dkt. No. 2-2] ("Burleson Decl") ¶ 4).

8.      As a Staffing Manager, Ms. Fisher was also responsible for marketing SHC's staffing capabilities to existing and potential clients at various Atlanta and Georgia-based healthcare facilities in order to acquire new clients while working to maintain relationships with existing clients and striving to meet their staffing needs. (Burleson Decl. at ¶ 5).

9.      SHC fully trained Ms. Fisher with its business operations, familiarized her with the healthcare-staffing market in which SHC operates, and instructed her on skills critical to success in healthcare recruiting. Among other things, SHC put Ms. Fisher through a ninety (90) day training course and provided her with a mentor to ensure her success at SHC. (*Id*. at ¶ 7).

10.     In addition, SHC gave Ms. Fisher access to its confidential business and customer information and its financial and pricing structure for the benefit of SHC. All of this information, including the facility relationships SHC had before Ms. Fisher joined SHC, was accessible to Ms. Fisher to enable her to work for the benefit of SHC. (*Id*. at ¶ 8).

11.     Over the course of her employment, Ms. Fisher proved very successful at strengthening SHC's existing relationships with facilities and developing new relationships.  She further developed a substantial network of nurses and other healthcare professionals who could be employed by SHC to fill various facility staffing needs.  (*Id*. at ¶ 9).

12.     Ultimately, Ms. Fisher was responsible for, on average, approximately 60% of the revenue earned by the Atlanta office of SHC. (*Id*. at ¶ 10).

Ms. Fisher's Resignation

13.     Ms. Fisher voluntarily resigned her employment with SHC on April 3, 2015, and indicated her last day would be April 17, 2015. (Burleson Decl., ¶ 11).

14.     On April 20, 2015, Ms. Fisher began employment as a Branch Manager for Accountable Healthcare Staffing ("AHS") in the Atlanta region. In that capacity, Ms. Fisher provides nurses to healthcare organizations on behalf of AHS. (*Id*. ¶ 15; Complaint in *Fisher et al. v. SHC Holdco* in the Gwinnett County Superior Court in and for the State of Georgia ("Georgia Compl") on file with this Court [Dkt No. 2-1 starting at p. 31]; in the interest of convenience, a true and correct copy of the Georgia Complaint is attached hereto at <u>Exhibit 2</u>).

15.     AHS is a direct competitor of SHC with an office in Atlanta, Georgia, less than twenty (20) miles away from the SHC office out of which Ms. Fisher worked for SHC. (Burleson Decl. ¶ 21)

16.     When it became clear that Ms. Fisher was leaving SHC to work for AHS and would not reconsider her resignation, SHC released Ms. Fisher on April 15, 2015, two days prior

to the completion of her two-week notice, out of concern that Ms. Fisher was leaving SHC to work for a competitor and a desire to protect its proprietary information. (*Id.* at ¶ 16).

17.     On April 14, 2015, SHC wrote to Ms. Fisher and to AHS notifying them of Ms. Fisher's continuing obligations to SHC under the Agreement she had signed in December of 2013. (*See* SHC's Complaint against Ms. Fisher, on file in this matter at [Dkt. No. 2-1] ("Compl."), at ¶ 59).

Litigation Between the Parties

18.     On April 21, 2015, AHS and Ms. Fisher filed a complaint against SHC in Gwinnett County, Georgia, seeking a declaration that Sections 4(a)(i)–(v) of the Agreement are unenforceable (the "Georgia Action") (*See* Georgia Compl. at ¶¶ 18-33).

19.     In filing that complaint, Fisher admitted the following:

- Fisher currently resides in Marietta, Georgia (Georgia Compl., ¶ 4);

- AHS conducts business in Georgia (*Id.*);

- Fisher is a former SHC employee (*Id.* at ¶ 8);

- Fisher signed the Agreement with SHC on December 16, 2013 (*Id.* at ¶ 9);

- SHC employed Fisher first as a Staffing Manager and then as a Senior Staffing Manager (*Id.*);

- In those roles, Fisher "provided nurses to home health patients and to healthcare organizations on behalf of SHC" (*Id.*);

- Fisher resigned from SHC and accepted employment with AHS, where she began work on April 20, 2015 (*Id.* at ¶ 16);

- AHS currently employs Fisher in its Atlanta region (*Id.*);

- Fisher's role at AHS is very similar to her role at SHC in that she "will provide nurses to healthcare organizations." (*Id.*).

20.     In the Georgia Action, AHS and Ms. Fisher addressed the confidentiality, non-solicitation, and non-competition covenants that underlie this complaint. AHS and Ms. Fisher conclude that these covenants "likely would be enforced against Fisher by a Utah court" and that,

as a whole, "the Agreement would be enforced against Fisher if analyzed under Utah law." (*Id.* at ¶¶ 25, 27).

21.     SHC similarly filed suit in the Third District Court for the State of Utah, Summit County on April 28, 2015.  This matter was subsequently removed to the United States District Court, District of Utah, and became the above-captioned matter (the "Utah Action"). (*See* Notice of Removal [Dkt. No. 2]).

22.     In this action, SHC seeks, among other things, preliminary injunctive relief prohibiting Ms. Fisher from working for AHS in direct violation of the restrictive covenants in the Agreement. (Compl. at ¶¶ 83-89). These issues are addressed separately in SHC's pending Motion for Temporary Restraining Order and Preliminary Injunction, the analysis of which is not repeated here. SHC does not assert claims against AHS in the Utah Action. (*See* Compl. at ¶¶ 1-2, 71-89).

23.     SHC initially filed the Utah Action in Summit County, Utah pursuant to a forum selection clause in the Agreement executed by Ms. Fisher. (Notice of Removal at ¶ 1). This provision reads:

> Each of the parties hereto hereby irrevocably and unconditionally consents to submit to the jurisdiction of the courts of the State of Utah and of the United States of America, in each case located in the County of Summit, which shall be ***the sole and exclusive jurisdiction*** to commence any litigation arising out of or relating to this Agreement and the transactions contemplated hereby (and ***agrees not to commence any litigation relating thereto except in such courts***.)

(Agreement at § 7(c)).

24.     Notwithstanding this provision, Ms. Fisher has now moved the Court for an order dismissing or transferring the Utah Action to Georgia on the basis of improper venue and 28 U.S.C. § 1404(a) (Motion to Dismiss [Dkt. No. 9] at p. 1). She also seeks to have the Court abstain from hearing this action in deference to the Georgia action initiated by Ms. Fisher and AHS, in violation of the Agreement's forum selection clause. (*Id.*)

## ARGUMENT

### I.      Venue in the District of Utah Is Proper.

Ms. Fisher contends that venue is improper under 28 U.S.C. § 1391.  In so arguing, Ms. Fisher disregards a fundamental principle of law. In fact, it is well settled that venue is subject to contractual waiver. *See, e.g., National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315 (1964); *United States ex rel. B & D Mechanical Contractors, Inc. v. St. Paul Mercury Ins. Co.,*  70 F.3d 1115, 1117 (10th Cir. 1995); *Big O Tires, LLC, v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 114 (D. Colo. 2010).  This is the case here and venue is proper pursuant to the parties' Agreement.

#### A.  The Forum Selection Clause Controls.

The  rule  regarding  forum  selection  clauses  has  been  clear  since  the  United  States Supreme Court's ruling in *M/S Bremen v. Zapata Off-Shore Co.* in 1972.  Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595 (1991); *Am. Soda LLP v. U.S. Filter Wastewater Gp., Inc.,* 428 F.3d 921, 927 (10th Cir. 2005); *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992). "[W]hen venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory." *Am. Soda* 428 F.3d at 927.  This principle was reaffirmed by the Tenth Circuit as recently as November 4, 2014 in *Niemi v. Lasshoffer*, 770 F.3d 1331, 1351 (10th Cir. 2014): "We will enforce a mandatory forum selection clause unless the party challenging it 'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" (quoting *M/S Bremen*, 407 U.S. at 15).

A forum selection clause is mandatory where the agreement contains "clear language showing that jurisdiction is appropriate only in the designated forum."  *Excell, Inc. v. Sterling*

1

*Boiler & Mech., Inc.,* 106 F.3d 318, 321 (10th Cir. 1997); *see also Am. Soda* 428 F.3d at 927;

*K&V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th

Cir. 2002); *Fenley v. Tulsa Inspection Resources, LLC,* No. 15–2316–JW, 2015 WL 1978207, *2

(D. Kan. May 1, 2015) (unreported).

> The forum selection clause contained in the Agreement provides:

> Each of the parties hereto hereby irrevocably and unconditionally consents to submit to the jurisdiction of the courts of the State of Utah and of the United States of America, in each case located in the County of Summit, which shall be ***the sole and exclusive jurisdiction*** to commence any litigation arising out of or relating to this Agreement and the transactions contemplated hereby (and ***agrees not to commence any litigation relating thereto except in such courts***.)

(Agreement at § 7(c)) (emphasis added; parenthetical in original). The language of this provision

is unarguably mandatory. It expressly prohibits the parties from initiating suit in a venue other

than that specified. On this basis, the provision is presumptively enforceable and venue in this

forum is appropriate.

Ms. Fisher has not made the requisite showing that enforcement of the forum selection

clause would be unreasonable in order to justify an exception to the general rule. In fact, in her

motion to dismiss or transfer, Ms. Fisher makes *no argument* that the clause cited above is

unenforceable. She has not pleaded – let alone demonstrated – that the provision is the product of

fraud or overreaching. (*See* Georgia Compl. at ¶¶ 24−25) (seeking to avoid forum selection

clause on grounds of public policy). This is apparent from Ms. Fisher's Georgia Complaint in

which she asserts no claim of fraud, but rather claims she was not told about the Agreement prior

to her acceptance of employment. (*Id*. at ¶¶ 9, 24−25). This does not amount to fraud.

Here, Ms. Fisher voluntarily accepted employment with SHC. She voluntarily signed the

agreement at issue containing the forum selection clause as a condition of that employment.

(Ure Decl. at ¶¶ 19−20).  While she now contends that she felt like she "did not have choice but

to sign" the Agreement, this is not the case. (Georgia Compl. ¶ 9; Declaration of Amanda Fisher

2

[Dkt. No. 9-1] ("Fisher Decl.") at ¶ 3). Ms. Fisher did not have to sign the Agreement; she could have declined and sought employment elsewhere. Instead, she signed the agreement, which was a condition of her employment with SHC. (Ure Decl. at ¶ 20). She then accepted the benefit of that employment for the duration of her time with SHC including the training, education, benefits, and salary that accompanied it.

Even if the Agreement was not freely negotiated, however, the Supreme Court has made clear that the absence of negotiation does not render an agreement unenforceable. In *Carnival Cruise Lines, Inc.,* 499 U.S. 585, the Supreme Court addressed the validity of a non-negotiated forum selection clause making Florida the proper forum. The Court upheld the clause on the basis that the cruise line had a special interest in limiting the fora in which it would be subject to litigation as a result of the masses of passengers it served from myriad jurisdictions. *Id.* at 593. Additionally, the Court found benefit in the *ex ante* establishment of a forum for dispute resolution to dispel "any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources." *Id.* at 594. This concern is of obvious import here.

Like Florida in *Carnival Cruise Lines*, Utah is not a "remote alien forum." It is the home of Ms. Fisher's former employer, a fact that is apparent from the Agreement itself. (Agreement at § 7(e)). SHC's headquarters are in Utah. Moreover, in the modern era, the pressures of litigating in foreign states, historically used to avoid forum selection clauses, prove a bit archaic. This is evidenced by the fact that Ms. Fisher is represented both in Georgia and in Utah by the same law firm. She will not be required to travel for deposition and with electronic resources, any inconvenience is minimal. And, regardless, mere inconvenience does not justify disregard of an otherwise valid forum selection clause. *M/S Bremen*, 407 U.S. at 17-18 ("Whatever

'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.").[1]

The language of the Agreement is clear. The language of the Agreement is mandatory. And Ms. Fisher has proffered no argument, let alone evidence, that the Agreement is the product of fraud or overreaching. Having accepted the benefits of this very same Agreement for the duration of her employment with SHC, Ms. Fisher cannot now contend that its enforcement is unfair or unreasonable. Accordingly, this venue is proper.

### B. *Atlantic Marine* Does Not Alter the Analysis.

In asserting that venue in the District of Utah is improper, Ms. Fisher disregards the impact of the forum selection clause completely. Rather, she contends that the Supreme Court in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. 568 (2013) altered the standard announced in *M/S Bremen* over forty years ago. It did no such thing.

In *Atlantic Marine*, the defendant sought dismissal for improper venue on the grounds that a forum selection clause dictated a different venue. The Court held that Fed. R. Civ. P. 12(b)(3) was the wrong vehicle for an improper venue motion; instead, such an argument should have been made as a motion to transfer pursuant to 28 U.S.C. § 1404(a). *Id.* at 579-580; *Niemi*, 770 F.3d at 1351. In so doing, the Court articulated that venue is "improper" if it does not comport with the requirements of 28 U.S.C. § 1391(b). Venue is not "wrong" within the meaning

---

[1] Ms. Fisher spends the majority of her § 1391 argument focusing on *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366 (11th Cir. 2003), in which the Alabama District Court transferred a case to Georgia where the all of the acts giving rise to the claim occurred in Georgia. (Motion to Dismiss at 3-5). Setting aside, for a moment, the propriety of discussing the various contacts between the parties' and the chosen fora, *Jenkins* proves inapposite. First, unlike in *Jenkins*, here the parties have contacts with the Utah forum mandated by the Agreement's forum selection clause. In fact, SHC is headquartered in Utah. There are witnesses in Utah. There are documents in Utah. And the injury is felt in Utah. (*See, e.g.,* Ure Decl. at ¶¶ 2, 30-33). Second, and more importantly, the agreement between the parties in *Jenkins* was devoid of a forum selection clause. The *Jenkins* Court had to go through the traditional venue analysis because no forum selection clause existed to dictate the forum. Here, the mandatory forum selection clause and the rule of *M/S Bremen* control. This is the proper forum.

4

of Fed. R. Civ. P. 12(b)(3), however, solely because it does not comport with a valid forum selection clause. *Atlantic Marine*, 134 S. Ct at 579-580. Stated another way, venue may be appropriate under § 1391(b), but inappropriate under a forum selection clause which may justify a transfer to the contractually-determined forum. The *Atlantic Marine* case did not say that a venue determined by a forum selection clause is improper unless it meets the standards of § 1391(b). To the contrary, the Supreme Court emphasized the importance of forum selection clauses and the deference to be accorded to them in a transfer analysis.

The Supreme Court quoted with approval *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988), for the proposition that "'a valid forum selection clause [should be given] controlling weight in all but the most exceptional cases.'" *Atlantic Marine*, 134 S.Ct. at 581 (quoting *Stewart*, 487 U.S. at 33); *see also Niemi*, 770 F.3d at 1351. It reinforced, rather than weakened, the import of forum selection clauses in venue analyses. To find otherwise would be to invalidate the *M/S Bremen* rule and default *solely* to § 1391(b) in determining venue. It would render all forum selection clauses meaningless. This was not the Supreme Court's intent.

### C.  No Transfer Pursuant to 28 U.S.C. § 1406(a) Is Warranted.

A transfer or dismissal pursuant to 28 U.S.C. § 1406(a) is appropriate only where a case is filed "laying venue in the wrong division or district….."  28 U.S.C. § 1406(a).  As discussed above, this venue is not improper. Ms. Fisher and SHC are parties to a valid and enforceable forum selection clause. In executing the Agreement as a condition of her employment with SHC, Ms. Fisher expressly consented to the exclusive jurisdiction of the courts of the State of Utah and the United States in the District of Utah.

### II.    The First-to-File Rule Does Not Enable Ms. Fisher to Avoid the Mandatory Forum Selection Provision.

The first-to-file rule does not enable a party to avoid its contractual obligations by racing to the courthouse. Under the first-to-file rule, "when cases involving the same parties and issues

have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars–Sinai Medical Center v. Shalala,* 125 F.3d 765, 769 (9th Cir.1997).   The exercise of this discretion is not appropriate here.

"Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order 'to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477, *2 (10th Cir. 1999) (unpublished decision) (quoting *Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914, 917 (5th Cir.1997) (quotation omitted)). "To aid in achieving this goal, the "first-to-file" rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court." *Buzas Baseball, Inc*, 189 F.3d at *2 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 625 (9th Cir.1991)). But, the first-to-file rule does not provide a proper basis to set aside a valid forum selection clause containing mandatory language. *Universal Operations Risk Mgmt., LLC v. Global Rescue LLC*, No. C 11-5969 SBA, 2012 WL 2792444, at *5-6 (N.D. Cal. July 9, 2012) (citing *Automated Solutions, Inc. v. Fadal Machining Centers, LLC,* 2011 WL 2182457, at *5 (D. Idaho 2011) ("Although Plaintiffs were the first to file, the Court finds that should not defeat an otherwise valid and enforceable forum selection clause which Plaintiffs have not shown to be unreasonable nor does the Court find it to be."); *Megadance USA Corp. v. Knipp,* 623 F.Supp.2d 146, 149 (D.Mass.2009) ("It is improper for a party to invoke the first filed doctrine in the face of a clearly articulated forum selection clause in a contract."); *Hy Cite Corp. v. Advanced Marketing Intern., Inc.,* 2006 WL 3377861, at *4 (W.D.Wis.2006) ("The interests of justice mandate that the first-to-file rule should not be applied to plaintiffs' action because of the forum selection clause contained within [the]  agreements.")).

Plainly, "the first-to-file rule is not a legitimate basis for permitting the individual Plaintiffs to escape a contractual obligation to litigate claims in the parties' agreed upon forum." *Universal Operations,* 2012 WL 2792444, at *6. Indeed, to adopt Ms. Fisher's argument, manipulating the first-to-file rule to defeat a valid and enforceable mandatory forum selection clause, "would encourage parties to rush to the courthouse to file lawsuits for the purpose of circumventing their agreed-upon promises." *Id.* This cannot be the case. The first-to-file rule does not permit Ms. Fisher to avoid the mandatory forum selection provision in her Agreement with SHC. (Agreement at § 7(c)). This matter is properly litigated in the state and federal courts of Utah, only.

**III.    *Younger* Abstention Is Improper.**

The elements a movant must demonstrate before a federal court will abstain under *Younger v. Harris*, 401 U.S. 37 (1971) are not in dispute: (1) interference with ongoing state proceedings; (2) the involvement of important state interests; and (3) the existence of an adequate state forum for resolving the case. *Southwest Air Ambulance Inc. v. City of Las Cruces*, 268 F.3d 1162, 1178 (10th Cir. 2001) (citing *J.B. ex re. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (internal citations omitted)); *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). As a threshold matter, however, these elements only come into consideration after the underlying state court proceeding meets an initial hurdle.

The three factors set forth by Ms. Fisher and often recited in *Younger* jurisprudence are not dispositive factors; instead, these are "*additional* factors appropriately considered by the federal court before invoking *Younger*. Divorced from their quasi-criminal context, the three [factors] would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 593 (2013) (emphasis in original). That is to say, before these additional factors are even considered, the underlying state court action must be deemed (1) criminal; (2)

akin to a criminal proceeding; or (3) to involve the state court enforcing its own order in furtherance of a judicial function. *Id*. Thus, while SHC and Ms. Fisher do not dispute the *Younger* abstention elements, SHC vehemently contests their applicability. Simply put, because the Georgia Action does not clear the initial hurdle, the additional factors need not be addressed.

> **A. *Younger* Applies Only Where the Proceedings Are Criminal, Quasi-Criminal or Uniquely Judicial In Nature; The Georgia Action Does Not Meet This Initial Threshold**.

The United States Supreme Court recently had occasion to revisit *Younger* abstention. In the matter of *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013), the Supreme Court explained in no uncertain terms that *Younger* abstention is a disfavored doctrine with limited applicability:

> Abstention is not in order simply because a pending state-court proceeding involves the same subject matter. *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 373 (1989) (*NOPSI* ) ("[T]here is no doctrine that ... pendency of state judicial proceedings excludes the federal courts."). This Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief. See *id.,* at 368.
> …
> Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI,* "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.,* at 367–368. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)).

*Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. at 588.

The Georgia Action does not fit into any of the three categories justifying *Younger* abstention. First, it is not a state criminal proceeding. The Georgia Action is a civil action brought by Ms. Fisher and AHS to enjoin SHC from enforcing the Agreement. (*See* Georgia Compl.).

Second, the Georgia Action is not a civil enforcement proceeding akin to a criminal prosecution. The United States Supreme Court addressed such a case in *Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975). In *Huffman,* "Ohio officials brought a civil action in state court to abate the showing of obscene movies in [defendant's] theater. Because the State was a party and the proceeding was 'in aid of and closely related to [the State's] criminal statutes,' the Court held *Younger* abstention appropriate." *Sprint Commc'ns, Inc.*, 134 S. Ct. at 591 (quoting *Huffman*, 420 U.S. at 604); *see also Moore v. Sims*, 442 U.S. 415, 423 (1979) (where State was a party and civil action involved the temporary removal of a child in a child-abuse context, *Younger* abstention implicated); *Trainor v. Hernandez*, 431 U.S. 434 (1977) (civil action brought by state of Illinois for welfare fraud was akin to criminal prosecution and thus implicated *Younger* abstention). Here, the State is not a party to the Georgia Action. And, the Georgia Action does not involve a civil enforcement akin to a criminal prosecution, such as pursuing welfare fraud or child custody. (*See* Georgia Compl.¶¶ 4-7; 18-33). Thus, the Georgia Action cannot be couched with this prerequisite to *Younger* abstention.

Third, and finally, the Georgia Action does not qualify as a civil proceeding involving the Georgia court's orders uniquely in furtherance of the Georgia court's ability to perform its judicial functions. An example of this category implicating *Younger* abstention is where the matters pending before the state court are contempt proceedings.

> A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. … [W]e think it is of sufficiently great import to require application of the principles of those cases. The contempt power lies at the core of the administration of a State's judicial system.

*Juidice v. Vail*, 430 U.S. 327, 335 (1977). Likewise, a state's interest in forcing individuals to post bond in response to a court's civil judgment was an order uniquely in furtherance of the court's ability to perform its judicial function, thereby implicating *Younger* abstention. *Pennzoil*

9

*Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). Here, the Georgia Action involves an attempt by an individual and private entity to avoid the enforcement of a non-competition agreement. (Georgia Compl. at ¶¶ 4-8; 18-33). This is not akin to a court attempting to hold someone in contempt or enforce the requirement of bond. Ms. Fisher and AHS are not asking a Georgia court to enforce its order uniquely in furtherance of its judicial function. (*Id*. at ¶¶ 18-33).

Plainly, the Georgia Action does not meet the threshold inquiry for *Younger* abstention. The analysis ends here.

### B. Assuming the Georgia Action Met *Younger's* Initial Threshold, Which It Does Not, Abstention Nevertheless Remains Improper.

The Georgia Action does not fit into one of the limited categories of cases to which *Younger* abstention applies. Notwithstanding this fatal flaw, the Georgia Action likewise fails to meet the additional factors set forth by Ms. Fisher. *See Southwest Air Ambulance Inc.*, 268 F.3d at 1178. In particular, while the Georgia Action is an ongoing state court proceeding – though not of the type necessary to implicate *Younger* – the relief SHC seeks does not interfere with that proceeding; the action before this Court does not implicate important Georgia interests and the Georgia is not an adequate state forum. The failure to satisfy any one of these factors proves fatal. Here, Ms. Fisher cannot demonstrate any of the additional factors.

First, contrary to Ms. Fisher's assertion, SHC does not seek equitable relief that would interfere with the Georgia Action. As a preliminary matter, the Georgia Action is improperly pursued. Ms. Fisher agreed to a mandatory forum selection clause requiring her to litigate in Utah. (Agreement at § 7(c)). Ms. Fisher's litigation in Georgia is in direct contravention of the parties' Agreement. Thus, that matter should be dismissed on the grounds that by asserting it, Ms. Fisher is in breach of her Agreement with SHC that requires her to litigate in Utah. Thus, SHC's desired equitable relief against Ms. Fisher does not interfere with the Georgia Action, because that matter is not properly litigated in Georgia.

10

Nevertheless, Ms. Fisher appears to take issue with the interference this matter will have with AHS, rather than herself. (Motion to Dismiss at p. 8 ("Moreover the injunction that Plaintiff seeks in its complaint … would effectively enjoin a party to the Georgia case – Accountable Healthcare Staffing.")). But this is not the case. If SHC is successful before this Court in enjoining Ms. Fisher from violating her non-competition Agreement, this injunctive relief does not limit AHS' ability to pursue claims against SHC in Georgia.[2] Moreover, if this Court ultimately enjoins Ms. Fisher from violating her non-competition Agreement, which relief SHC seeks, this would not enjoin the Georgia court from adjudicating AHS' independent claims. (Compl. at ¶¶ 83-89).

Second, the action before this Court does not implicate important Georgia interests or, alternatively, Utah has a greater interest in this proceeding. Although Ms. Fisher was employed for SHC in Georgia and is now competing against SHC in Georgia, Utah, rather than Georgia, has a greater interest in the proceedings occurring both here and in Georgia. (Georgia Compl. at ¶¶ 8, 16). Utah is the home to many witnesses in this matter as well as SHC's principal place of business. (*See* Ure Decl. ¶ 2; Agreement at § 7(e)). SHC and Ms. Fisher agreed to a mandatory forum selection clause requiring litigation to occur in Utah. (Agreement at § 7(c)). And, Utah law applies to Ms. Fisher's and SHC's Agreement. Utah has an interest in enforcing agreements that protect Utah businesses and apply Utah law. *See Sunflower Bank, N.A. v. Lund*, 2011 WL 4526780 (D. Kan. Sept. 28, 2011) (Where agreements were entered into in Arizona with Arizona citizens, but were made subject to Kansas laws, were entered into with a Kansas business and injury was felt in Kansas, Kansas had equivalent interests and court did not abstain from exercising jurisdiction over Kansas action in favor of Arizona action).

---

[2] Notably, AHS is not a party to Ms. Fisher's and SHC's Agreement and thus has no interest in enforcing or prohibiting the enforcement of that Agreement. (*See* Agreement at p. 1). Thus, proceeding with this action in Utah against Ms. Fisher, only, is of no moment to AHS.

Further, the Utah law on restrictive covenants and the Georgia law on restrictive covenants are remarkably similar. For example, under both Utah and Georgia law, a duration of two years for a restrictive covenant is presumptively reasonable. *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 426−27 (Utah 1983); Ga. Code Ann. § 13-8-57. And a geographic restriction of a fifty mile radius is generally enforceable where the former employer did business in those areas. *System Concepts,* 669 P.2d at 427; Ga. Code Ann. § 13-8-56. Thus, the restrictive covenant at issue here, while concededly enforceable under Utah law (Georgia Compl. at ¶ 25), should not raise any policy concerns under Georgia law.

Third, and finally, Georgia does not provide an adequate forum to resolve this matter. In fact, Georgia is an improper forum. (Agreement at § 7(c)). Ms. Fisher and SHC agreed that litigation arising out of the Agreement shall occur in Utah and that Utah law shall apply. (*Id*.). Utah is the proper forum, not Georgia. *Younger* abstention does not apply.

### IV.    This Is Not An Exceptional Case Warranting *Colorado River* Abstention.

*Colorado River* abstention is the exception rather than the rule. "[F]ederal courts have an obligation to exercise jurisdiction in the absence of exceptional circumstances." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 13 (1983). And this obligation "does not evaporate simply because there is a pending state court action involving the same subject matter." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). "The potential for conflict between a federal action and a parallel state action, standing alone, does not justify staying the exercise of federal jurisdiction under the Colorado River abstention doctrine." *Id*. at 816. Absent exception circumstances, a federal court shall not abstain from exercising its jurisdiction under the *Colorado River* doctrine.

Exceptional circumstances justifying abstention under *Colorado River* require an examination of: (1) whether there is a *res* over which one court has established jurisdiction; (2) the inconvenience of the federal forum; (3) whether maintenance of separate actions may result

in piecemeal litigation; (4) which case has priority, focusing on the relative progress made in each case; (5) whether state or federal law controls; and (6) the adequacy of the state forum to protect the federal plaintiff's rights. *Moses H. Cone*, 460 U.S. at 16. "Rather than use the factors as a mechanical checklist, a court should engage in a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (internal quotations omitted). Indeed, since "'[o]nly the clearest of justifications will warrant dismissal,' any doubt should be resolved in favor of exercising federal jurisdiction." *Id*. (quoting *Colorado River*, 424 U.S. at 819). These factors dictate against abstention in this matter.

First, no *res* is at issue. There are no claims that would require this Court to exercise jurisdiction over any property. (*See* Compl. at ¶¶ 71-89; Georgia Compl. ¶¶ 18-33). There is no competition for jurisdiction over a *res*. Thus, this factor does not favor abstention.

Second, the United States District Court for the District of Utah is not an inconvenient forum. SHC is headquartered in Utah. (Ure Decl. ¶ 2). SHC has relevant witnesses in Utah. (*Id*.). And, importantly, Ms. Fisher agreed to litigate disputes arising out of the Agreement in Utah. (Agreement at § 7(c)). That is, Ms. Fisher waived her argument that Utah is an inconvenient forum. *See, e.g., Boccard USA Corp. v. TigPro, Inc.*, 2007 WL 1894154,**9−10 (S.D. Tex. July 2, 2007) (citing *Stewart org*, 487 U.S. at 33 (Kennedy, J., concurring)). This factor does not weigh in favor of abstention.

Third, maintaining separate actions will not result in piecemeal litigation. The primary motivating factor behind *Colorado River* abstention, the threat of piecemeal litigation, means the threat of "inconsistent rulings with respect to a piece of property." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000); *see also Colorado River*, 424 U.S. at 819 (1976). "*Duplicative* litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping

13

jurisdiction. " *Black Sea*, 204 F.3d at 650 (emphasis in original). Here, because this case does not involve jurisdiction over a *res* or property, there exists no danger of inconsistent rulings affecting property ownership. (*See* Compl. at ¶¶ 71-89; Georgia Compl. ¶¶ 18-33). Moreover, potentially inconsistent rulings with respect the enforcement of the non-competition Agreement, while likely troublesome to SHC, do not raise the judicial concerns of inconsistent rulings regarding a piece of property. Finally, because Georgia is a not proper forum this litigation, Georgia should decline to exercise its jurisdiction; thus, inconsistent rulings will be wholly avoided. (Agreement at § 7(c)). This factor does not weigh in favor of abstention

Fourth, the relative progress made in this matter is, at the time of this brief, further advanced than that in Georgia. "This factor, as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Here, Ms. Fisher and AHS filed their action in Georgia on April 21, 2015. (*See* Georgia Compl.). A hearing was held in that matter on Friday, May 8, 2015, at which time the substance of the complaint was not addressed. (*See* Docket for *Fisher et al. v. SHC Holdco*, Case No. 15-A-045962 in the Superior Court of Gwinnett County, State of Georgia, available at https://www.gwinnettcourts.com/casesearch/casedetail.aspx?FileId=15-A-04596-2).

SHC filed its complaint, motion for temporary restraining order and preliminary injunction and supporting memorandum and declarations in the Third District Court, Summit County, for the State of Utah on April 28, 2015 – one week after the Georgia action was filed. (*See* Notice of Removal [Dkt. No. 2] at ¶ 1). Ms. Fisher removed that matter to this Court on May 4, 2015. (*Id.*). Ms. Fisher then filed the Motion to Dismiss on May 7, 2015 [Dkt. No. 9]. This Court had a scheduling hearing on May 11, 2015, during which time a briefing schedule on the preliminary injunction and motion to dismiss was set. (*See* Notice of Hearing [Dkt. No. 8]).

14

In this Court, both parties have filed briefs and declarations. Although the Court has not yet ruled on the substance of this matter, the parties have commenced briefing and have offered evidence to support their arguments. This exceeds the progress made to date in Georgia. Thus, this factor does not weigh in favor of abstention.

Fifth, this matter involves neither federal law nor unique state law issues. While the presence of a federal law issue is a major consideration "'weighing against surrender of jurisdiction[,']" "the absence of a federal law issue does not counsel in favor of abstention." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d at 1193 (5th Cir. 1988) (quoting *Moses H. Cone*, 460 U.S. at 26). This case, involving a breach of contract and restrictive covenant, is not a peculiar state law issue requiring abstention. (Compl. at ¶¶ 71-89). Thus, this factor does not weigh in favor of abstention.

Sixth, and finally, the Georgia Action will not sufficiently protect the rights of SHC. The factor of adequate protection to a federal plaintiff in the state court action "can only be a neutral factor or one that weighs against, not for, abstention. A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum …." *Evanston Ins. Co.*, 844 F.2d at 1193. Here, SHC, with its headquarters in Utah and as a party to an Agreement requiring litigation in Utah under Utah laws has an interest in litigating in Utah and in enforcing the terms of its Agreement. (Ure Decl. ¶ 2; Agreement at § 7(c)). This factor does not favor abstention.

Because the factors constituting "exceptional circumstances" sufficient to justify exercising *Colorado River* abstention largely, if not entirely, speak against abstaining, the Court should decline Ms. Fisher's invitation to dismiss or stay this matter.

### V.      No Transfer Is Warranted On the Basis of *Forum Non Conveniens*.

As a last ditch effort to avoid litigation in this forum, Ms. Fisher seeks a convenience transfer pursuant to 28 U.S.C. § 1404(a).  There is no basis for such a transfer. This is made clear by the very cases relied upon by Ms. Fisher.

15

While not instructive on whether Utah is a proper venue for this dispute, *Atlantic Marine* is instructive on the question of whether a transfer is appropriate. It provides, in part:

> The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." [*Steward*, 487 U.S.] at 33, 108 S.Ct. 2239 (KENNEDY, J., concurring). For that reason, and because the overarching consideration under §1404(a) is whether a transfer would promote "the interest of justice," "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 33, 108 S.Ct. 2239 (same).

*Atlantic Marine*, 134 S.Ct. at 581. On this basis alone, no transfer is warranted. That being said, even upon further analysis, Ms. Fisher has failed to demonstrate that justice is served by a convenience transfer in this case.

In a typical case, a district court considering a § 1404(a) transfer must "evaluate both the convenience of the parties and various public interest considerations." *Atlantic Marine*, 134 S.Ct. at 581. This calculus is modified in the face of a forum selection clause. *Id.* Under this analysis – or even a traditional analysis – no transfer is warranted.

## A. SHC's Choice of Forum In Accordance With the Agreement Weighs Against Transfer.

A plaintiff's choice of a forum *contrary to* a selection clause is given no weight. *Id.* In this case, SHC filed in the forum, and now prosecutes this action in the forum, dictated by the contract. As a result, the traditional deference to the plaintiff's choice of forum should be considered. *See, e.g., Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). That is, when entering into a forum selection clause, the parties "exercise [their] venue privilege] before a dispute arises. Only that initial choice deserves deference." *Atlantic Marine*, 134 S.Ct. at 582. Because SHC filed its action in a forum mandated by the Agreement, its choice deserves deference and favors denial of Ms. Fisher's request for a transfer. (Agreement at § 7(c)).

### B.  Ms. Fisher's Private Interests Are Not Considered.

As summarized by the Supreme Court in *Atlantic Marine*, private interests to be considered in a traditional *forum non conveniens* analysis include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditions and inexpensive." *Atlantic Marine,* 134 S.Ct. 581, n. 6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981) (internal quotation marks omitted)). These factors, however, are disregarded in the face of a forum selection clause. *Atlantic Marine*, 134 S.Ct. at 581-82. Nevertheless, Ms. Fisher directly relies on these factors in arguing that witnesses and documents reside in Georgia. (Motion to Dismiss at 13). There should be no consideration of these facts. Even if there is, however, it must also be considered that that SHC is a Utah company, it has witnesses in Utah, and its documents and records are here. (Ure Decl. at ¶ 2). Moreover, in this day and age of electronic discovery and filing, there is no substantial inconvenience to litigating in a forum away from one's home.

### C.  The Public Interest Weighs Against Transfer.

Having disregarded private interests in light of a forum selection clause, the Court "may consider arguments about public interest factors only." *Atlantic Marine*, 134 S.Ct. at 582. These include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine,* 134 S.Ct. 581, n. 6 (quoting *Piper Aircraft Co.*, 454 U.S. 235, 241, n. 6 (internal quotation marks omitted)).  Here, the parties, one of which is headquartered in Utah, entered into an agreement to be governed by Utah law and litigated in Utah state and federal courts (Agreement at § 7(c)).  Ms. Fisher argues now that this choice of law provision is unenforceable; this is incorrect.

17

Under Utah law, where the parties negotiate and sign an agreement with an unambiguous choice-of-law provision, that provision is enforceable. *Innerlight, Inc. v. Matrix Grp., LLC*, 2009 UT 31, ¶¶ 14-16, 214 P.3d 854*; see also GRB Enters. LLC v. JPMorgan Chase Bank*, No. 2:11CV833DAK, 2012 WL 845418, at *3 (D. Utah Mar. 12, 2012) ("Utah courts generally uphold choice-of-law provisions based on the intent of the contracting parties and a respect of the parties' right to choose the governing law for a contract."). Even if the court were to apply a more rigorous test, the choice-of-law provision at issue here would still be enforceable. Before the Utah Supreme Court addressed this issue in *Innerlight, Inc.*, 2009 UT 31, ¶¶ 14-16, the Tenth Circuit assumed that "Utah, like other jurisdictions, would look to general contract principles to resolve the question of whether parties can stipulate to choice of law in their contract." *Shearson Lehman Bros., Inc. v. M&L Invs.*, 10 F.3d 1510, 1514 (10th Cir. 1993); *see also Elec. Distribs., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083-84 (10th Cir. 1999). Specifically, a choice-of-law provision applies as long as (1) the chosen state has a "substantial relationship to the parties" or there is some other "reasonable basis" for the choice, and (2) applying the provision would not be "contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Shearson*, 10 F.3d at 1514.

Here, the fact that SHC's principal place of business is in Utah is enough to establish a "reasonable basis" and satisfy the first element. *Shearson Lehman Bros.*, 10 F.3d at 1515 ("Shearson's principle place of business is New York, so there is a reasonable basis for applying New York law."). With respect to the second element, Utah's interest in the enforcement of restrictive covenants protecting Utah-based businesses is materially greater than Georgia's interest in voiding such covenants. More importantly, applying a Utah choice-of-law provision is not "contrary to a fundamental policy" of Georgia. In 2010, Georgia voters amended the Georgia Constitution to permit Georgia lawmakers to enact legislation concerning restrictive covenants, and the lawmakers did just that. *See* Ga. Code Ann. § 18-8-53 *et seq*. Under that law, effective

1195604.1

May 1, 2012, restrictive covenants like those at issue here are enforceable when the bound employee was responsible for soliciting customers, obtaining orders or contracts for products or services, or directing the work of other employees. *Id.* Fisher did all three while at SHC. When addressing this exact issue, the Eleventh Circuit concluded that applying another state's law to enforce restrictive covenants "would not offend Georgia's public policy," as long as the restrictive covenants are enforceable under HB 173, as codified at Ga. Code Ann. §§ 18-8-53, *et seq. See Becham v. Synthes USA*, 482 F. App'x 387, 391–92 (11th Cir. 2012).

This court is plainly more familiar with Utah law than a Georgia Court. Further, this dispute involves a relationship between an employee and her Utah-based employer. (Ure Decl. ¶ 2; Compl. ¶¶ 1-2). This is a dispute connected to Utah, to be governed by Utah law. (Agreement at § 7(c)). The public interest factors urge retention of this action in Utah.

### D. Ms. Fisher's Assertion that the Court Lacks Personal Jurisdiction Is Misplaced.

In conjunction with her argument that this matter should be transferred to Georgia out of convenience, Ms. Fisher asserts that this court lacks personal jurisdiction over her. Notably, however, Ms. Fisher has not asserted a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). And, in fact, she cannot now do so.

As a preliminary matter, Ms. Fisher expressly consented to the exercise of personal jurisdiction over her in the State of Utah. The Agreement provides that: "Each of the parties hereto hereby irrevocably and unconditionally consents to submit to the jurisdiction of the courts of the State of Utah and of the United States of America, in each case located in the County of Summit…." (Agreement at § 7(c)).  By unequivocally consenting to the jurisdiction of Utah state and federal courts, Ms. Fisher waived any contention that the Court lacks personal jurisdiction. *See Inso Corp. v. Dekotec Handelsges, mbH*, 999 F. Supp. 165, 166 (D. Mass. 1998) (citing *M/S Bremen,* 407 U.S. at 11); *see also Pure Energy Club, LLC v. Williams*, No. 1:10-CV-74 TS, 2011

19

WL 2579757, at *3 (D. Utah June 28, 2011). And, as with the forum selection clause, Ms. Fisher

has not brought forth any evidence that this provision was the product of fraud or overreaching.

Moreover, and again contrary to Ms. Fisher's assertion, there is a rational nexus between

this forum and the dispute at hand. Ms. Fisher executed an Agreement with SHC as a condition

of her employment. (Ure Decl. ¶ 20). That very Agreement, both explicitly in SHC's address,

and implicitly through the Utah forum selection and choice of law provision, put Ms. Fisher on

notice that she was employed by a Utah-based company. (Agreement at §§ 7(c), (e)). And for the

entire duration of her employment, Ms. Fisher accepted the benefits of this employment from

this Utah-based company. In seeking employment with a competitor, she violated this agreement

and caused injury, and threatens to cause more injury, to SHC which will be felt in Utah. (Ure

Decl. ¶¶ 2, 19-33). There is a rational nexus between this dispute and the forum.  And, there is a

rational basis on which to subject Ms. Fisher to the jurisdiction of this Court. But there is no

basis on which to transfer this action to Georgia.

## CONCLUSION

By her present motion, Ms. Fisher goes to great lengths to ask this court to sanction her

breach of her Agreement with SHC through dismissal or transfer of this action to Georgia.

There is no basis in law, however, to grant her the relief sought. Ms. Fisher signed a valid and

enforceable forum selection clause. She cannot now ignore that fact. Accordingly, for the reasons

set forth herein, SHC respectfully requests that the Court deny Ms. Fisher's Motion and proceed

to the merits of this dispute.

Dated this 21st day of May, 2015.

JONES WALDO HOLBROOK & MCDONOUGH PC


By: */s/ Nathan D. Thomas*
      Nathan D. Thomas
      Elizabeth M. Butler
      *Attorneys for Plaintiff*

20

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 21st day of May, 2015, I caused a true and correct copy of the

foregoing document to be served via CM/ECF on the following:

Conrad S. Kee
JACKSON LEWIS P.C.
222 S. Main Street, Suite 500
Salt Lake City, Utah 84101
keec@jacksonlewis.com

*/s/ Nathan D. Thomas*

21

1195604.1